[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-11275

Non-Argument Calendar

_____

DANA HAMPTON,

                                                    Plaintiff-Appellant,

*versus*

AMEDISYS GEORGIA, LLC,
d.b.a. Central Home Health Care.
an Amedisys Company,

                                                    Defendant,

LAURA DICKERSON,
AMEDISYS HOLDING, LLC.,

2                    Opinion of the Court                22-11275

                                           Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-01874-WMR

_____

Before JORDAN, BRANCH and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Dana Hampton, an African-American woman, appeals from the district court's order granting summary judgment to Amedisys Georgia, LLC ("Amedisys"), her former employer and Laura Dickerson, her former supervisor (collectively "the defendants"), in her case alleging race discrimination under 42 U.S.C. § 1981, retaliation under § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2, 3, and state law intentional infliction of emotional distress and negligent retention claims. In her complaint, Hampton alleged that Dickerson terminated her unlawfully because of her race, that Dickerson knew of her racial discrimination claim and retaliated against her by terminating her, that Dickerson had racist tendencies and treated the Caucasian employees more favorably, and that Dickerson acted outrageously when she terminated Hampton.

Hampton argues on appeal, with respect to her race discrimination claim, that the district court erred in concluding that she did not identify a comparator and that she failed to show that her termination was pretextual. In other words, Hampton failed to show that Amedisys terminated her employment because she falsified documents when she entered an incorrect payroll code, "A-code," after Dickerson told her that she misused the code. She also argues, with respect to her retaliation claim, that the district court erred in determining that Dickerson, who terminated her, was unaware that Hampton engaged in any protected activity prior to firing her, and that she did not show pretext. Additionally, Hampton argues that the district court erred in finding that she did not present a "convincing mosaic" of circumstantial evidence to support her discrimination and retaliation claims. Further, she argues that the district court erred in granting summary judgment to Amedisys and Dickerson with respect to her state law claims. Having read the parties' briefs and reviewed the record, we affirm the district court's grant of summary judgment to the defendants.

## I.

We review a district court's grant of summary judgment *de novo*, "viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). "We will affirm the grant of summary judgment only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Id.* For a factual issue to be genuine, it "must

have a real basis in the record." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Id.*

## II.

Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts. 42 U.S.C. § 1981; *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459-60, 95 S. Ct. 1716, 1720 (1975). Discrimination claims arising under § 1981 "have the same requirements of proof and use the same analytical framework" as Title VII claims. *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256-57 (11th Cir. 2012). Section 1981 discrimination claims that rely on circumstantial evidence are evaluated under the burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Id.* at 1255.

Under *McDonnell Douglas*, the plaintiff bears the initial burden to establish a *prima facie* case of discrimination. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220 (11th Cir. 2019) (*en banc*) ("*Lewis I*"). To establish a *prima facie* case, a plaintiff must show that (1) she belonged to a protected class, (2) she was subjected to an adverse action, (3) she was qualified to perform her job, and (4) her employer treated "similarly situated" employees outside her class more favorably. *Id.* at 1220-21.

To prove that an employer treated a similarly situated individual outside of an employee's protected class more favorably, the employee must show that she and a comparator were "similarly situated in all material respects." *Lewis I*, 918 F.3d at 1229. Generally, a "similarly situated" comparator will have "engaged in the same basic conduct (or misconduct) as the plaintiff," "been subject to the same employment policy," and "will share the plaintiff's employment or disciplinary history." *Id.* at 1227-28. If the plaintiff succeeds in making out a *prima facie* case of discrimination, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221.

If the defendant meets that burden, the plaintiff must "demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." *Id.* To show pretext, a plaintiff must show both that the proffered reason was false, and that discrimination was the true reason. *Ring v. Boca Ciega Yacht Club, Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021). "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and . . . not on reality as it exists outside of the decision-maker's head." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).

The record supports the district court's finding that Hampton did not identify a similarly situated comparator whom the defendants treated more favorably than her. Hampton repeatedly makes blanket allegations that non-African American employees often misused the A-Code and were not terminated from their

employment; however, she fails to specifically identify any employee, other than Shante Collins, a clinical manager ("Collins") and Hampton herself, who misused the A-Code, let alone an employee who was "similarly situated in all material respects." *Lewis*, 918 F.3d at 1218.

As the district court found, Collins is not an appropriate comparator because Collins is not outside of Hampton's protected class; Collins is also an African American female. Moreover, Collins is not an appropriate comparator because Collins did not engage in the same misconduct as Hampton. Dickerson testified that Collins was not terminated for improperly using the A-Code because Dickerson counseled her about it, and she ceased using the A-Code. On the contrary, after Dickerson counseled Hampton on her improper use of the A-Code, Hampton proceeded to use the code two more times.

Hampton repeatedly claimed that Dickerson treated her differently than non-African American and Caucasian colleagues, but she did not provide evidence of who Dickerson allegedly treated differently, and how that different treatment was related to Hampton's race. Hampton testified that she felt Dickerson singled her out for harassment, but this mere allegation does not indicate that Dickerson treated her differently because of her race. As the district court correctly concluded, without identifying an appropriate comparator, Hampton fails to satisfy the fourth element of a prima facie case of discrimination.

Further, even if Hampton established a *prima facie* case, she cannot show that the defendants' proffered reason for terminating her, inappropriate A-code use, was pretextual. Dickerson terminated Hampton's employment after Hampton misused the A-Code, Dickerson counseled Hampton on the appropriate use of the A-Code, and Hampton proceeded to use the A-Code two additional times. Dickerson thus terminated Hampton's employment for falsifying payroll records, which is a critical offense violation under the company's policy. Because we conclude that Amedisys and Dickerson have adequately explained their rationale for terminating Hampton, and Hampton has not presented evidence that their reasons are merely pretexts for discrimination, we affirm the district court's grant of summary judgment to the defendants on Hampton's claim of racial discrimination.

### III.

Under Title VII, an employer may not retaliate against an employee because she has opposed any practice made unlawful under that law, or because she has made a charge or participated in a proceeding thereunder. 42 U.S.C. § 2000e-3(a). Employment-related retaliation claims are also cognizable under § 1981. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452, 128 S. Ct. 1951, 1958 (2008).

A retaliation claim based on circumstantial evidence is also analyzed under the *McDonnell Douglas* burden-shifting framework. *Ring*, 4 F.4th at 1163. Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of retaliation. *Id.* To establish

a *prima facie* case of retaliation, a plaintiff may show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse action; and (3) the adverse action was causally related to the protected expression. *Id.; see also Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse.").

For *prima facie* purposes, the causation requirement has been construed broadly such that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (quotation marks omitted). However, at a minimum, an employee must show that "the decisionmaker actually knew about the employee's protected expression." *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020). An employer's awareness "can be established through circumstantial evidence—but not by unsupported inference." *Id.* Particularly, evidence that an individual "could have told" a decision maker about an employee's protected activity constitutes "pure speculation," and does not defeat summary judgment when the decision maker denies knowledge of the employee's activity. *Id.* at 1054.

The record demonstrates that the district court did not err in granting summary judgment to Amedisys and Dickerson on Hampton's claim of retaliation. Hampton did not establish a *prima facie* case of retaliation because she did not show that Dickerson

knew of any complaint of racial discrimination before Dickerson terminated Hampton's employment. Hampton's testimony does not indicate she complained to the Human Resources Representative, Beau Bergeron, about racially motivated conduct by Dickerson; Hampton does not mention race at all in her recollection of her phone call with Bergeron. Hampton further attested that on July 10, 2019, she had a phone conversation with Jessica Fernald, another Human Resources Representative, during which she complained about Dickerson's racial discrimination and harassment. After the conversation, Hampton stated that she sent Fernald an email providing examples of the racial discrimination and harassment from Dickerson that she relayed during the phone conversation. However, the record indicates that Hampton's email does not mention racially motivated conduct by Dickerson. Rather, the email included numerous incidents and grievances she had with Dickerson, yet it failed to mention even once how Hampton's race influenced the issues she had with Dickerson.

Further, as discussed above, Hampton did not show that the defendants' proffered reason for terminating her was pretextual. Hampton offers no evidence that Dickerson knew of Hampton's complaints on June 26, 2019, or July 10, 2019, prior to her termination. Hampton seems to assume that Dickerson knew about the complaints based on the temporal proximity between Hampton's July 10 complaint, and Dickerson's contact with Fernald on July 11 seeking to terminate Hampton's employment. However, in her declaration, Dickerson attested that she was not aware that

Hampton had lodged a complaint of racial discrimination and harassment against her.

Hampton's assumption that Dickerson knew about her June 26, 2019, and July 10, 2019, complaints is not supported by the record. The evidence demonstrates that Dickerson warned Hampton on two occasions not to use the A-Code for patient visits made during regular business hours. However, Hampton continued to use the A-Code two additional times despite Dickerson's warnings to her that she was misusing the payroll code. Dickerson then contacted Human Resources about Hampton's termination. Hampton offers no evidence that "the reason proffered was not the real basis for the decision, but a pretext for discrimination." *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 806 (11th Cir. 1995). Thus, we affirm the district court's grant of summary judgment to the defendants on Hampton's retaliation claim.

## IV.

We have held that the *McDonnell Douglas* framework is not the only way to defeat a summary judgment motion in the Title VII discrimination context. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). A plaintiff can also survive summary judgment if she presents "a convincing mosaic of circumstantial evidence" that raises a reasonable inference that her employer intentionally discriminated against her. *Id.* A plaintiff may show a "convincing mosaic" by presenting evidence that demonstrates (1) suspicious timing, ambiguous statements, and "other bits and pieces from which an inference of discriminatory intent

might be drawn," (2) "systematically better treatment of similarly situated employees," and (3) "that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) ("*Lewis II*") (internal quotation marks omitted).

We have not held, in a published opinion, that the "convincing mosaic" theory is applicable in Title VII retaliation cases. In *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265 (11th Cir. 2021), we assumed without deciding that a "convincing mosaic" theory could be used to establish a retaliation claim, but concluded that the plaintiff had not shown a "convincing mosaic" for the same reasons that his retaliation claim failed under the *McDonnell Douglas* framework. *Id.* at 1273 n.2.

Likewise, even assuming that the "convincing mosaic" theory is applicable in the retaliation context, we conclude that the district court properly found that Hampton did not present a convincing mosaic of circumstantial evidence to support her retaliation claim. As stated earlier, the record belies Hampton's claim that Dickerson retaliated against her because there is no evidence that Dickerson knew Hampton had complained about Dickerson's alleged discriminatory animus. Thus, Hampton cannot demonstrate a convincing mosaic to support her retaliation claim under either theory. Accordingly, we affirm the district court's grant of summary judgment to the defendants with respect to Hampton's convincing mosaic arguments.

V.

"[A]n appellant abandons a claim when [s]he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). To adequately brief a claim, an appellant must "plainly and prominently" raise it, "for instance by devoting a discrete section of his argument to those claims." *Id.* Additionally, "[w]hen an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed." *Id.* at 680.

To support an intentional infliction of emotional distress claim under Georgia law, a plaintiff must show that (1) the conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress was severe. *Plantation at Bay Creek Homeowners Ass'n v. Glasier*, 825 S.E.2d 542, 550 (Ga. Ct. App. 2019).

We conclude that Hampton has abandoned on appeal her intentional infliction of emotional distress claim because she does not assert that there was a causal connection between wrongful conduct and severe emotional distress. The record provides no evidence to show that the defendants' conduct was intentional or reckless, or extreme and outrageous. Thus, we affirm the district court's judgment as to this claim.

## VI.

Under Georgia law, to support a claim of negligent retention, "a claimant must show that the employer knew or should have known of the employee's propensity to engage in the conduct which caused the plaintiff's injury." *Herrin Bus. Prods., Inc v. Ergle*, 563 S.E.2d 442, 446 (Ga. Ct. App. 2002). A negligent retention claim is "necessarily derivative and can only survive summary judgment to the extent that the underlying substantive claims survive the same." *Metro. Atlanta Rapid Transit Auth. v. Mosley*, 634 S.E.2d 466, 489 (Ga. Ct. App. 2006).

We conclude that the district court properly granted summary judgment to the defendants on each of Hampton's underlying claims; thus, her derivative negligent retention claim also fails. *See id.* Accordingly, the district court did not err in granting summary judgment to the defendants as to this claim, and we affirm its judgment.

Based on the aforementioned reasons, we affirm the district court's grant of summary judgment to the defendants on Hampton's racial discrimination claim, retaliation claim, and state law claims.

**AFFIRMED.**